IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

COMMUNITY EMPOWERMENT
COUNCIL, INC.; TONY ANDERSON;
And CHARLES ANDERSON                                                              PLAINTIFFS

V.                                     No.  5:11CV049 DPM

CITY OF PINE BLUFF; CARL REDUS,
Individually and Officially; and
FRED TISDALE, Individually and
Officially                                                                          DEFENDANTS

### DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS

Comes now Defendants, Carl Redus and Fred Tisdale, in their individual and official capacities; and the City of Pine Bluff, by and through undersigned counsel, and for their Statement of Undisputed Material Facts, herein states:

1. Plaintiffs sought a Use Permitted Upon Review "UPOR," to operate a foster home housing at least six (6) children in what was formerly a residential home. **Exh. A**, *Defendants' Initial Disclosures*, **UPOR Application**. The City Planning Commission imposed a maximum of 16 children for the home. **Exhibit I, Depo. Of Charles Anderson**, 5:10-18.

2. The request was to deem the home an Emergency Shelter, and such a facility is defined in the City of Pine Bluff Code to mean a facility that provides "twenty-four (24) hour custodial care for six (6) or more unrelated children on an emergency basis . . . ." **Exhibit A** (note: Plaintiffs termed the proposed facility as an Emergency Shelter in their UPOR application); **Exhibit B**, *Defendants' Initial Disclosures*, **excerpt of Pine Bluff Code § 29-2**.

3. The permit application was *approved*, but on the condition that the Plaintiffs meet all other City codes and regulations. Indeed, the Planning Staff recommended to the Planning Commission that the approval be conditioned on, *inter alia*, "[t]he applicant meeting any other city and state regulations, including being licensed by the Arkansas Department of Health and Human Services." **Exhibit C**, *Defendants' Initial Disclosures*, **Recommendation of Planning Staff**, p. 2.

4. The City of Pine Bluff Inspection Department, via Charles Warren, issued an inspection checklist to Plaintiff Tony Anderson noting the requirement of a sprinkler system. Mr. Anderson signed the checklist. **Exhibit D**, *Defendants' Initial Disclosures*, **Checklist**. The requirement of a sprinkler system was not made in the first instance by Fred Tisdale as is evident from an Inspection Department Inspector's signature on the checklist. *Id*.

5. Captain Fred Tisdale followed up the checklist with a letter explaining the portions of the 2006 International Fire Code—the most recent version adopted by the State of Arkansas as of 2008—that required the foster care facility to install a sprinkler system. **Exhibit E**, *Defendants' Initial Disclosures*, **Letter from Tisdale, 7/22/2010**.

6. The International Fire Code represents a regulatory scheme that requires the Fire Marshal to review proposed land uses to determine what fire prevention measures are required. It requires, among other things, that the Marshal first determine the type of facility at issue by reference to the International Residential Code, and then requires the Marshal to cross-reference the particular facility's designation with the requirements for that designation present in the International Fire Code. *See* **Exhibit F**, *Defendants' Initial Disclosures*, **excerpts of International Residential Code & 2006 International Fire Code**. The City's Fire Marshal is required as a deputy of the State Fire Marshal to follow the requirements of the most recently

adopted Fire Prevention Code by the State and Plaintiffs do not dispute the same. **Exhibit J, Depo. Of Tony Anderson**, 13:11-14.

7.      Here, Fred Tisdale reviewed the two codes and concluded sprinklers were required for the protection of the inhabitants of the home—foster children—and conveyed the same to the Plaintiffs. **Exhibit E**. Specifically, because the facility had been limited to 16 children, it was categorized as R-4, which also required a sprinkler system to be installed. **Exh. E**; **Exhibit I**, **Depo. Of Charles Anderson**, 6:6-17, 7:3-10. This was the second time this was conveyed to the Plaintiffs; the first time, Plaintiffs signed off on the requirement having presented no objection. **Exhibit D**, *Checklist*.

8.      Indeed, as noted in Group I-1 (**Exhibit F**), the type of building use at issue is characterized as housing persons who cannot care for themselves because of age or other reasons, and live in a supervised residential environment that provides person care services on a 24-hour basis. When the occupancy is limited to between 6 or 16 persons, it is categorized as R-4. The Plaintiffs admit Community Empowerment's Cherry Street property meets the above criteria, yet still deny they were required to install sprinklers. **Exhibit J, Depo. Of Tony Anderson**, 6:16-23, 7:1-3, 7:7-9, 7:21-135 – 8:1.

9.      When one cross-references that designation with Section 903.2.5 of the Fire Code which references Group I or R, it is clear the Code requires a sprinkler system to be installed. **Exh. F**, **Exh. E**. Tisdale noted this possibility in his letter and the alternative possibility—based on underlying factual circumstances because the City restricted the facility to 16 children maximum—that the facility met the R-4 designation; either designation requires the installation of a sprinkler system. **Exhibit E,** *letter*; **Exhibit F, Code § 903.2.7** (also requiring "an automatic sprinkler system . . . .")

10. Plaintiffs, rather than installing sprinklers chose to file the instant suit. Indeed, Plaintiffs wrote the City Attorney claiming other entities that were allegedly similar were not required to install sprinkler systems. The same is denied.

11. The City Attorney conclusively demonstrated that either those facilities were not similarly situated to the Plaintiff facility or, in fact, a sprinkler had been required. **Exhibit G**, *Defendants' Initial Disclosures*, **Letter from Carol Billings, City Attorney, to Plaintiffs' Counsel**.

12. In response to a discovery request seeking Plaintiff's allegations as to which, if any, entities are similarly situated, Plaintiff notes two entities: (1) CASA Women's Shelter on the corner of 8th Street and (2) Aikman Properties (an apartment complex) located at 4511 South Main Street. Neither property is similarly situated to Plaintiff's property in all relevant respects. **Exhibit H**, *Plaintiffs' Response to Interrogatory No. 8*.

13. The CASA women's shelter was built in the early 1990s. The version of the International Building Code and the version of the International Fire Code adopted by the State of Arkansas at that time did not require sprinklers to be installed. **Exhibit G**, Letter from City Attorney Carol Billings; **Exhibit K**, **Affidavit of Fred Tisdale**, ¶¶ 4-6.

14. Aikman Properties (apartments) began construction in 2007. The State of Arkansas adopted a more recent version of the International Fire Code on April 25, 2008. **Exhibit G**, *Letter*. Indeed, Plaintiff admits construction of Aikman began in 2007. **Exhibit H**. The prior version of the Fire Code did not require sprinklers for the Aikman development. **Exhibit K, Affidavit of Fred Tisdale, ¶¶ 4-5.** Furthermore, Plaintiffs have failed to present any evidence that Aikman properties is owned or run by Caucasian individuals as opposed to

African-American individual so as to support their Equal Protection claim based on race. **Exhibit J**, **Depo. Of Tony Anderson**, 12:24-25 – 13:1-10.

15.     Fred Tisdale is the Fire Marshal for the City of Pine Bluff and has held that position since January 2008.  Prior to that, he was the acting Fire Marshal from the end of 2006-2007, and the Assistant Fire Marshal for 2005. **Exhibit K, Affidavit of Fred Tisdale**, ¶ 1.

16.     When a new business is proposed for existing construction within the City of Pine Bluff, the proposed owner of the business typically calls the City Building Inspector's office and informs the building inspector of the type of business to be placed in the existing building. The Fire Marshal gets periodic information on new businesses from the City Building Inspector, and in turn, the City Fire Marshal and the City Building Inspector perform an on-site inspection and give the proposed owner a list of items that need to be added and/or repaired in order to be compliant with Code for that particular type of business, and the proposed owner is given 30 days to make the necessary changes.  Once the changes are made, another on-site inspection is performed, and if the building is in compliance, the Fire Marshal and Building Inspector sign off on the necessary documentation allowing a business license to be issued. *Id*. **at ¶ 3**.

17.     Phase I of the Aikman Property apartments fell under the requirements of the 2002 Arkansas Fire Prevention Code (comprised of the 2000 International Fire Code) based upon the plans being submitted while the 2002 Arkansas Fire Prevention Code was in place. According to the 2002 Arkansas Fire Prevention Code, Phase I of the Aikman Property apartments did not require a sprinkler system due to the number of building stories and the number of units within each building.  *Id*. **at ¶ 4**. Plaintiffs concede that Aikman apartments are where families live. **Exh. J**, 54:10-13.

18.     Phase II of the Aikman Property apartments was reviewed under the 2006 International Building Code requirements except where those requirements differed from the 2002 Arkansas Fire Prevention Code. In those instances, the 2002 Arkansas Fire Prevention Code governed based upon the plans being submitted while the 2002 Arkansas Fire Code was in place. According to the 2002 Arkansas Fire Prevention Code, Phase II of the Aikman Property apartments did not require a sprinkler system. ***Id*. at ¶ 5** and *See* attached Exhibit 1 to Affidavit of Fred Tisdale, *Letter to Rob Aikman explaining review, 9/27/07* and *Project General Review Sign-Off Sheet, 11/30/07*.

19.     The CASA Women's Shelter opened in 1990 and was subject to the requirements of the 1983 Arkansas Fire Prevention Code (comprised of the 1982 Editions of Standard Fire and Standard Building Codes), which became effective September 20, 1983, and did not require sprinklers in the type of occupancy classification that CASA fell under. ***Id*. at ¶ 6**; *See* attached Exhibit 2 to Affidavit of Fred Tisdale, *1983 Arkansas Fire Prevention Code, Chapter IX*. It is undisputed, however, that CASA is opening a new facility and it has sprinklers. **Exh. J**, **Depo. Of Tony Anderson**, 19:5-9.

20.     While Plaintiffs claim two women that run the CASA shelter are Caucasian, they do not know the race of the owners of the shelter or the race of the individual who requested the permit to run the shelter with the City of Pine Bluff. **Exhibit J**, **Depo. Of Tony Anderson**, 11:22-25 – 12:1-3. Nor do Plaintiffs have information regarding the race of the individuals who stay at CASA. *Id*. at 12:8-9. CASA is a shelter for adult women. *Id*. at 12:10-12.

20.     Community Empowerment's proposed site was subject to the requirements of the 2007 Arkansas Fire Prevention Code (comprised of the 2006 International Fire Code), which

became effective August 1, 2008. **Exhibit K, Affidavit of Fred Tisdale at ¶ 8**; *See* attached Exhibit 4 to Affidavit of Fred Tisdale, *2007 Arkansas Fire Prevention Code.*

21. The 2007 Arkansas Fire Prevention Code (which incorporated the 2006 International Fire Code) contained changes that required sprinklers in certain types of buildings that were not previously required to have sprinklers. *Id*. **at ¶ 9**. Plaintiffs concede the 2006 Fire Prevention Code, adopted in 2008, applied to them at the Cherry Street address. **Exhibit J, Depo. Of Tony Anderson**, 8:15-24.

22. Fred Tisdale sent a letter to Tony Anderson stating that Community Empowerment's proposed site was required to have sprinklers. **Exhibit K, Affidavit of Fred Tisdale, at ¶ 10**; *See* attached Exhibit 5 to Affidavit of Fred Tisdale, *Letter to Tony Anderson, 7/22/10*. Tisdale explained that the facility fell within the I or R categories and therefore under the 2006 International Fire Code were required to install sprinklers. *Id*.

23. The former Fire *Chief*, as distinguished from *Fire Marshal*, Danny Smith—who is African-American— eventually agreed with Tisdale and conveyed the requirement that Plaintiffs were required to install sprinklers to Tony Anderson. **Exh. J, Depo. Of Tony Anderson**, 14:20-24, 26:13-24.

24. While Mr. Smith is not a Defendant, the Plaintiffs admit that it was Smith who also required the installation of sprinklers at the Cherry Street property. **Exh. J, Depo. Of Tony Anderson**, 15:5-8.

25. Plaintiffs do not have expertise in the application or interpretation of the Fire Prevention Code. *Id*. at 15:20-22.

26. Plaintiffs do not have an interpretation or opinion about how the International Building Code categorizes the facility they propose to open on Cherry Street. *Id*. at 16:8-17. As

stated, Fred Tisdale did make such an interpretation and his opinion is that the facility is either categorized as an I or an R, both which require sprinklers. *See supra at ¶ 9*.

27. CASA and Community Empowerment are also different (besides the date they were started and, consequently the applicable fire code for each) in that Community Empowerment seeks to care for foster children that have been taken out of their homes and CASA is a shelter where women can voluntarily go presumably. **Exh. J, Depo. Of Tony Anderson**, 28:23-25 – 29:1.

28. Plaintiffs asked the Pine Bluff City Council to override the decision of the fire marshal. **Exh. J, Depo of Tony Anderson**, 42:1-3. However, the Plaintiffs have no information regarding whether the Council has taken up the request. *Id.* **at 42**.

29. The Plaintiffs caught the Mayor (who is himself African-American) outside a council meeting and, they *claim* the Mayor stated "well I'm just going to go with whatever they said." Plaintiffs don't know who "they" refers to when they make this statement. Any wrongdoing alleged against the Mayor is denied. *Id*. **at 43**. However, when asked whether Mr. Anderson was accusing Mayor Redus of discrimination based on race, he stated: "It's my interpretation that I don't know anything about Mayor Redus. He wasn't in any of those meetings, so I haven't heard any word come out of this mouth." *Id. at* **47:21-23.**

30. The Plaintiffs were sent a letter (**Exhibit G**), in response to their complaint that CASA was being treated more favorably, by the City Attorney Carol Billings in which she noted that any later wiring addition to the CASA building was handled by another City Department, not the Fire Marshal. Plaintiffs cannot dispute that statement by the Attorney for the City. **Exhibit J, Depo of Tony Anderson** *at* **43:15-21.**

31. The Arkansas Department of Human Services (DHS), like Mr. Tisdale, have concluded that Plaintiffs property constitutes an "emergency residential childcare facility." ***Id. at 50:21-25.***

                          Respectfully Submitted,

                          Carl Redus and Fred Tisdale, in their individual and official capacities; and the City of Pine Bluff, Arkansas
                          **DEFENDANTS**

        BY:    <u>/s/ Michael Mosley</u>
                 MICHAEL MOSLEY, ABA No. 2002099
                 Attorney for Defendants
                 P.O. Box 38
                 North Little Rock, AR  72115
                 Telephone:  (501) 975-6131
                 Email: mmosley@arml.org

## CERTIFICATE OF SERVICE

I, Michael Mosley, hereby certify that on March 27, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notification of such filing to the following:

Austin Porter
aporte5640@aol.com

                                              <u>/s/ Michael Mosley</u>
                                              MICHAEL MOSLEY, ABA No. 200209